Barbara DRAKE, Petitioner,

v.

INDUSTRIAL COMMISSION OF UTAH;
FHP of Utah; and Transamerica
Insurance Co., Respondents.

No. 940769–CA.

Court of Appeals of Utah.

Sept. 28, 1995.

James R. Hasenyager (argued), Marquardt, Hasenyager & Custen L.C., Ogden, for Petitioner.

Theodore E. Kanell (argued), Hanson, Epperson & Smith, Salt Lake City, for Respondents.

Before BILLINGS, GARFF [1] and JACKSON, JJ.

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Judicial Administration R3–108(4).

## OPINION

BILLINGS, Judge:

Barbara Drake petitions this court for review of a final decision and order of the Utah Industrial Commission (the Commission), denying her workers' compensation benefits for injuries she received in an automobile accident on August 14, 1991. The Commission determined petitioner was not acting within the scope and course of her employment at the time of her accident, *see* Utah Code Ann. § 35–1–45 (1994), and thus denied benefits. We reverse and remand for an award of benefits.

## FACTS

The facts in this case are not in dispute. Petitioner is an FHP employee. At the time of her accident, petitioner, who resides in Ogden, Utah, worked as a referral coordinator in the Salt Lake City FHP office. FHP operates a shuttle system to deliver referrals to its offices throughout the state. Referrals are documents authorizing FHP clients to seek treatment from non-FHP physicians. Under FHP policy, referrals are to be processed within forty-eight hours. However, petitioner was not receiving referrals until four to five days after they had been filed.

Petitioner discussed this delay with her supervisor. Because petitioner lived in Ogden, her supervisor requested that she deliver the Ogden referrals to that office and pick up the Salt Lake referrals and return them to Salt Lake the next working day. Thereafter, on her way home from work two to three times a week, petitioner delivered referrals from Salt Lake City to Ogden and picked up Salt Lake referrals.

Petitioner traveled different routes depending on whether she was delivering referrals or proceeding directly home. She would take Interstate 15 if she was delivering referrals and Highway 89 if she was driving directly home. The route petitioner took to the Ogden office constituted a five- to six-mile detour from the route petitioner normally drove home.

Petitioner's normal working hours are from 8:30 a.m. to 5:30 p.m. When delivering referrals, petitioner would sometimes be permitted to leave the Salt Lake office as early as 4:45 p.m. and as late as 5:00 p.m. The delivery of referrals to Ogden often took petitioner beyond an eight-hour work day.

On August 14, 1991, petitioner left the Salt Lake office around 4:45 or 4:50 p.m. Because she had referrals to drop off, petitioner took Interstate 15 to the Ogden office, dropped off the Ogden referrals, and picked up the referrals to be delivered to Salt Lake City the next morning. These referrals were in petitioner's car at the time of her accident. Shortly after exiting the Ogden FHP parking lot, petitioner was involved in an automobile accident. Petitioner was struck by another vehicle as she attempted to make a U-turn. She sustained severe injuries as a result of this collision.

Petitioner filed for workers' compensation. A hearing was held before an administrative law judge (ALJ). The ALJ entered findings of fact and an order, granting petitioner benefits, holding that she was on a "special errand" for her employer when the accident occurred. FHP filed a Motion for Review. The Commission overturned the ALJ's decision and denied petitioner worker's compensation. Petitioner filed a petition for review with this court.

## STANDARD OF REVIEW

On appeal, petitioner contends she was on a "special errand" for the benefit of FHP when her car was struck by another vehicle. FHP responds that the Commission correctly determined that petitioner's trip to the Ogden office was a part of petitioner's regular work duties, which were completed when she was injured, and that the "coming and going rule" therefore bars her recovery.

Whether petitioner was injured in the scope and course of her employment presents a question of law which, absent a grant of discretion, this court reviews for correctness. *See Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 588 (Utah 1991); *Walls v. Industrial Comm'n,* 857 P.2d 964, 966 (Utah App.1993). In *Stokes v. Industrial Commission,* 832 P.2d 56 (Utah App.1992), this court refused to grant the Commission discretion to interpret the Workers' Compensation Act (the Act). *Id.* at 58. Therefore, we review for correctness the Commission's determination that petitioner was not acting within the scope of her employment at the time of the accident.[2]

## ANALYSIS

### A. The Coming and Going Rule and the Special Errand Exception

Section 35-1-45 of the Act provides:

Each employee ... who is injured ... by accident *arising out of and in the course of his [or her] employment, wherever such injury occurred,* if the accident was not purposefully self-inflicted, shall be paid compensation for loss sustained on account of the injury ... and such amount for medical, nurse, and hospital services and medicines ... as provided in this chapter.

Utah Code Ann. § 35-1-45 (1994) (emphasis added).

It is well-settled "[t]hat traveling to and from work is not part of the employment and is not covered by Workmen's Compensation." *Lundberg v. Cream O'Weber/Federated Dairy Farms, Inc.,* 24 Utah 2d 16, 465 P.2d 175, 176 (1970). This is commonly called the "coming and going rule." However, an injury suffered by an employee traveling to or from work is compensable if the employee is on a special errand for the em-

---

**2.** In *VanLeeuwen v. Industrial Commission,* 901 P.2d 281 (Utah App.1995), this court held that "[w]hen an agency has discretion to apply its factual findings to the law, we will not disturb the agency's application 'unless its determination exceeds the bounds of reasonableness and rationality.'" *Id.* at 283 (quoting *Cross v. Industrial Comm'n,* 824 P.2d 1202, 1204 (Utah App.1992) (citation omitted)). We see little distinction be-

tween the Commission's interpretation of the Act and its application of the Act to the undisputed facts in this case. Moreover, our result is the same whether our scrutiny is under a reasonableness or a correctness standard of review and thus we need not resolve what seems to be a conflict in our standard of review precedent in the area of scope of employment.

ployer. *State Tax Comm'n v. Industrial Comm'n,* 685 P.2d 1051, 1053 (Utah 1984).

In an early case favorably quoted by the Utah Supreme Court in *State Tax Commission,* the California Supreme Court stated

"[W]hen the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer, any injury suffered while traveling to and from the place of such activity is also within the course of employment and is compensable."

*Id.* at 1054 (quoting *Dimmig v. Workmen's Compensation Appeals Bd.,* 6 Cal.3d 860, 101 Cal.Rptr. 105, 111, 495 P.2d 433, 439 (1972)). Moreover, " '[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered, is in the course of employment.' " *Id.* (quoting 1A Arthur Larson, *Larson's Workmen's Compensation Law* § 27.00 (1982)). In determining whether an exception to the coming and going rule should apply, Utah courts have focused "on the benefit the employer receives and his control over the conduct." *Whitehead v. Variable Annuity Life Ins. Co.,* 801 P.2d 934, 937 (Utah 1989); *accord VanLeeuwen v. Industrial Comm'n,* 901 P.2d 281, 284 (Utah App.1995).

The Utah Supreme Court has examined the special errand exception in several cases which are helpful to our analysis. In *Whitehead,* the court held that although the plaintiff intended to make some work-related phone calls at his home he was not on a special errand when he was injured while driving home. The court noted that the employer had no control over the plaintiff's decision to commute to and from work and that the plaintiff's commute was not performed for the benefit of the employer. *Whitehead,* 801 P.2d at 937.

Further, in *State Tax Commission,* the Utah Supreme Court considered a case in which the plaintiff sustained injuries in an automobile accident as she drove to a job-related training program located away from her usual place of employment. The court determined that although the plaintiff had traveled the same route to the training program every day over a period of two months she was nonetheless engaged in a special errand. 685 P.2d at 1054–55. The court explained that the plaintiff embarked on her training program with the knowledge and permission and at the direction of her employer, that her employer desired her to participate in the program, and that her employer would have benefitted from the training had the plaintiff been able to complete it. *Id.*

This court in *Cross v. Industrial Commission,* 824 P.2d 1202 (Utah App.1992), distinguishing the coming and going rule from its special errand exception, held that the injury the plaintiff suffered when his van exploded into flames as he drove home was not compensable. The plaintiff in *Cross* contended that because his job required that he travel long distances to work, the injuries he received on his commute home arose in the course of his employment. *Id.* at 1204. This court rejected Cross's argument that he conferred a substantial benefit on his employer by traveling long distances to and from temporary construction sites. *Id.* at 1205.

Thus, under Utah law, in determining whether petitioner was on a special errand for FHP at the time of her accident we focus on whether performance of the errand was outside her regular work activities, whether the activity was performed for the benefit and under the direction of FHP, whether the activity was related to the petitioner's job, and whether the nature of the journey was more onerous, inconvenient, or hazardous in relation to her regular travel to and from work.

Applying these principles to the instant case, we conclude petitioner's delivery of referrals constituted a special errand. Petitioner was employed by FHP as a referral coordinator in Salt Lake City. FHP had in operation an independent shuttle system designed to deliver referrals to petitioner in a timely fashion. This system was not operating as expected. Petitioner was not employed as a delivery person—nor did her job anticipate that she act as such. Petitioner

undertook the delivery of referrals between Ogden and Salt Lake City at the request of FHP solely to remedy a problem with FHP's shuttle system. Her accepting this assignment helped her perform her regular duties as a referral coordinator in a timely manner.

On the days petitioner delivered the referrals, she often did not leave until 5:00 p.m., therefore extending her day beyond her regularly scheduled hours. Additionally, petitioner's delivery of the referrals required her to make a five- to six-mile detour from her normal route home. Finally, although petitioner may have benefitted somewhat by being able to start her commute home earlier, FHP likewise benefitted by having a referral system that operated in a timely manner.

These undisputed facts support the conclusion that the delivery of referrals was for the benefit of FHP and was performed at its direction and under its control, that the route petitioner traveled when delivering the referrals constituted a detour from her normal travel and thus added an additional burden to her normal commute, and that the activity was outside, although related, to petitioner's regular duties.

■■■ The Commission, however, held that, because petitioner delivered the referrals on average three times a week, it had become a regular part of her work activities and therefore was not a special errand. FHP argues that because petitioner has accepted the Commission's findings of fact, we are bound by the finding that "[petitioner's] activities on the day of her accident were not outside her regular duties." This statement, however, is not a finding of fact; rather, it is a conclusion of law which is appropriate for this court to review on appeal.

■■■ Moreover, this conclusion is not necessarily consistent with Utah law. While the special errand exception often involves one-time occurrences or missions, it does not require the same in order for the injured employee to recover. Indeed, in *State Tax Commission*, the Utah Supreme Court held

in favor of an employee who had embarked upon the same journey everyday for two months. 685 P.2d at 1054–55. Likewise, in *Avila v. Pleasuretime Soda, Inc.*, 90 N.M. 707, 568 P.2d 233 (Ct.App.1977), the New Mexico Court of Appeals granted compensation to an employee who was injured on her way home after making the night deposit, as she did every night, finding as a matter of law that making the night deposit constituted a special errand, which the employee performed every working day. *Id.*, 568 P.2d at 235.

■■■ Further bolstering our conclusion, we note that the Utah Supreme Court has held the purpose of the Act is to protect employees who sustain injuries arising out of their employment. *State Tax Comm'n*, 685 P.2d at 1053. "To give effect to that purpose, the Act should be liberally construed and applied to provide coverage." *Id.* Thus, as between two competing views of the law, "[a]ny doubt respecting the right of compensation will be resolved in favor of the injured employee." *Id.* Accordingly, we construe the Act in favor of the injured employee and conclude that petitioner was on a special errand for FHP when she delivered referrals to the Ogden office the day of her accident.

### B. The Scope of the Special Errand Exception

This conclusion does not end our inquiry. This court must now determine whether the protection afforded by the special errand exception includes the injury petitioner sustained after dropping off the Ogden referrals and picking up the Salt Lake referrals. The scope of the special errand exception in this context has not been considered by Utah's courts.[3]

When an employee undertakes a special errand that exposes the employee to hazards outside the employee's normal commute, courts have held that the additional hazards of the route become hazards of the employ-

---

3. However, in *State Tax Commission*, the Utah Supreme Court quoted *Dimmig v. Workmen's Compensation Appeals Bd.*, 6 Cal.3d 860, 101 Cal.Rptr. 105, 111, 495 P.2d 433, 439 (1972), stating: "'[W]hen the employee engages in a special activity which is within the course of his employment, . . . any injury suffered while traveling *to and from* the place of such activity, is also within the course of employment and is compensable.'" 685 P.2d at 1054 (emphasis added).

ment. *See, e.g., Voehl v. Indemnity Ins. Co. of N. Am.,* 288 U.S. 162, 170, 53 S.Ct. 380, 383, 77 L.Ed. 676 (1933) (providing that with respect to special errand cases "the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act"); *Felton v. Hospital Guild of Thomasville, Inc.,* 57 N.C.App. 33, 291 S.E.2d 158, 160 (holding that "[w]here the employment requires travel [putting the employee in the position or at the place where the accident occurs], the hazards of the route become the hazards of the employment"), *aff'd,* 307 N.C. 121, 296 S.E.2d 297 (1982).

Likewise, courts have found that where a special errand requires the employee to alter his or her regular travel home to complete the errand, the errand continues until the time the employee completes it and then returns to his or her normal route home. *See, e.g., Avila v. Pleasuretime Soda, Inc.,* 90 N.M. 707, 708, 568 P.2d 233, 234 (Ct.App. 1977). In *Avila,* the employee was required to go out of her way each night to make the bank deposit before returning home for the evening. The court reasoned that making the night deposits was in addition to her usual duties and therefore constituted a special errand and found that the business character of the special errand persisted throughout the employee's detour and continued until she made her way back to her personal route home. *Id.* (citing 1 Arthur Larson, *Larson's Workmen's Compensation Law* §§ 19.36, 19.37 (1972)).

Similarly, in *Electronic Service Clinic v. Barnard,* 634 So.2d 707 (Fla.Dist.Ct.App. 1994), the Florida Court of Appeals was confronted with determining at which point a special errand ended and the employee began his or her personal commute home. In *Barnard,* the employee was required to make a lengthy round-trip in order to complete the special errand before returning home. The court found, in such a case, the attainment of the errand's objective should not be confused with the completion of the errand's burden. *Id.* at 709. The court held that, because the errand required the employee to travel a long distance out of his way to complete the errand, the burden created by that errand

was not complete until the overall trip had ended. *Id.* at 710. The court reasoned an employee should not be deemed to have completed a special errand simply because the objective of that errand has been accomplished, but held, rather, the special errand is deemed complete only at the time the additional burden placed on the employee by the errand has also been performed and "nothing remain[s] but the [employee's] resumption of his [or her] ordinary trip home." *Id.*

■ Adopting this authority, we conclude that after completing a special errand, an employee's travel back to his or her personal route home is within the course of employment. *See* 1 Arthur Larson, *Larson's Workmen's Compensation Law* § 19.29(a) and Pattern I (1995).

■ The Commission found that after leaving the Ogden office, petitioner had completed any errand that she may have been on because she did not immediately embark upon her normal route home. The Commission stated, "[s]ince the accident in question occurred as [petitioner] was driving to the child care center, the accident did not arise out of and in the course of her employment and would not be compensable even if she were otherwise on a 'special errand.'" In the instant case, it is undisputed that petitioner's trip to the Ogden FHP office constituted a five- to six-mile detour from her normal commute, and that petitioner had to backtrack five to six miles after leaving the Ogden FHP office before she could resume that commute. Furthermore, it is undisputed that the accident occurred immediately after petitioner exited the Ogden FHP parking lot; thus she was still within the detour created by the special errand. The mere fact that if the accident had not occurred, petitioner may have made an additional detour to pick her children up from day care does not negate our conclusion. The burden created by the special errand—the detour—was not complete when the collision occurred and petitioner therefore remained within the scope of her employment when she was injured. Consequently, we hold that petitioner

is entitled to receive workers' compensation for her work-related injuries.[4]

Accordingly, we reverse the Commission's Order denying petitioner coverage, and remand for an award of benefits.

GARFF and JACKSON, JJ., concur.

---

4. Today, we need only decide that when an employee engages in a special errand, that errand does not end, and thus coverage is continued, until the employee resumes his or her normal commute home. However, we note that some jurisdictions have held the special errand exception affords the employee "portal to portal" coverage, see *Charak v. Leddy*, 23 A.D.2d 437, 261 N.Y.S.2d 486, 487 (1965); *Powers v. Lady's Funeral Home*, 306 N.C. 728, 295 S.E.2d 473, 475 (1982); 1 Arthur Larson, *Larson's Workmen's Compensation Law* § 16.12 (1995), and that other jurisdictions have provided the employee coverage for the entire commute home. *See Johnson Stewart Mining Co. v. Industrial Comm'n*, 133 Ariz. 424, 428–29, 652 P.2d 163, 167–68 (Ct.App.1982); *accord Dimmig v. Workmen's Compensation Appeals Bd.*, 6 Cal.3d 860, 101 Cal.Rptr. 105, 111, 495 P.2d 433, 439 (1972). We need not reach that issue today.