Barbara DRAKE, Respondent,

v.

INDUSTRIAL COMMISSION OF UTAH,
FHP of Utah, and Transamerica
Insurance Company, Petitioners.

No. 950475.

Supreme Court of Utah.

May 13, 1997

James R. Hasenyager, Ogden, for Drake.

Alan Hennebold, Salt Lake City, for Industrial Commission.

Theodore E. Kanell, Todd N. Hallock, Salt Lake City, for Transamerica Insurance and FHP.

On Certiorari to the Utah Court of Appeals

DURHAM, Justice:

We granted certiorari in this case to review the Utah Court of Appeals' decision in *Drake v. Industrial Commission,* 904 P.2d 203 (Ct.App.1995), *cert. granted,* 913 P.2d 749 (Utah 1996), reversing the Industrial Commission and granting workers' compensation benefits to Barbara Drake for injuries she sustained in an automobile accident. Petitioners Industrial Commission of Utah, FHP of Utah, and Transamerica Insurance Company (collectively referred to as FHP) contend that the court of appeals applied the wrong standard when it reviewed the Commission's decision and erred in awarding benefits. We agree and reverse.

The facts in this case are undisputed. At the time of her accident, Drake was employed by FHP as a referral coordinator[1] in its Salt Lake City office. At some point during her employment, but several months before Drake's accident, FHP began to experience delays with its normal courier in the delivery of referrals to Salt Lake from various offices around the state. Because Drake lived in Ogden, Drake's supervisor asked her to pick up the referrals from the Ogden office two or three days a week on her way home. At the same time, she was also directed to deliver any completed referrals going to Ogden. On the days she made deliveries, Drake took a five- to six-mile detour from her normal route home. Drake was never compensated for her mileage in making these deliveries, nor was she given any extra compensation when the deliveries required her to work more than her eight-hour work day.[2]

On August 14, 1991, shortly after Drake had dropped off the referrals at the Ogden office, as she was on her way to pick up her children at their child-care center, Drake was involved in an automobile accident, causing her substantial injuries. Upon denial of cov-

---

**1.** Referrals are documents that authorize clients of FHP's health care system to seek treatment from physicians outside the FHP system.

**2.** The record is silent as to whether FHP anticipated that Drake would continue to make these deliveries indefinitely or whether it would eventually correct the problem with its existing courier and no longer need her help.

erage by her automobile insurance carrier, Drake applied to the Industrial Commission for workers' compensation benefits under Utah Code Ann. § 35–1–45.[3]

After a hearing, the administrative law judge (ALJ) for the Industrial Commission found that Drake's injuries arose out of and in the course of her employment. The ALJ found that although workers' compensation benefits are generally denied for injuries sustained on the way to or from work, Drake was on a "special errand" and had deviated from her normal route home for the benefit of her employer; therefore, she was still within the course of her employment at the time of her accident. Accordingly, the ALJ granted Drake's claim for benefits.

Upon motion for review, the Industrial Commission reversed the decision of the ALJ. Although the Commission adopted the ALJ's findings of fact, it determined that Drake was not on a special errand when she delivered the referrals. It concluded that the deliveries were part of Drake's regular duties because they were "according to routine." It thus denied benefits pursuant to the recognized "going and coming rule," finding that once Drake left the Ogden office, her activities no longer took place in the course of her employment.[4]

On petition for review, the court of appeals reversed. The court began its analysis by stating, "Whether petitioner was injured in the scope and course of her employment presents a question of law which, absent a grant of discretion, this court reviews for correctness." *Drake*, 904 P.2d at 205 (citing

*Morton Int'l, Inc. v. Auditing Div. of State Tax Comm'n*, 814 P.2d 581, 588 (Utah 1991)). The court then relied specifically upon *Stokes v. Industrial Commission*, 832 P.2d 56, 58 (Utah.Ct.App.1992), which found that the Commission did not have any discretion to interpret or apply the Workers' Compensation Act.[5] The court then concluded from the facts of the case that Drake's accident did occur while she was still on a special errand. The court relied upon the following facts: (1) Drake "undertook the delivery of referrals between Ogden and Salt Lake City at the request of FHP solely to remedy a problem with FHP's shuttle system"; (2) these deliveries often required Drake to work beyond her regularly scheduled hours; (3) the deliveries required Drake to "make a five-to six-mile detour from her normal route home"; and (4) "FHP ... benefitted by having a referral system that operated in a timely manner." *Drake*, 904 P.2d at 206–07. The court found insubstantial the fact that Drake had been delivering these referrals regularly two or three times a week for several months before her accident. *Id.* at 207. It specifically stated that whether the deliveries were part of Drake's regular job duties was "a conclusion of law" and found that the special errand exception "does not require [one-time occurrences] in order for the injured employee to recover." *Id.*

On certiorari, FHP does not argue that the court of appeals failed to apply the correct legal principles, but contends that it applied the wrong standard of review when it reviewed the Commission's determination that Drake's delivery was not special but was part

---

3. Section 35–1–45 of the Workers' Compensation Act provides in part:

> Each employee ... who is injured ... by accident arising out of and in the course of his [or her] employment, wherever such injury occurred, if the accident was not purposely self-inflicted, shall be paid compensation for loss sustained on account of the injury, ... and such amount for medical, nurse, and hospital services and medicines ... as provided in this chapter.

4. The Commission also held that even if the deliveries did constitute a "special errand," her travel to her children's child care constituted a personal deviation from this errand and therefore would also exempt her from benefits. On

review, the court of appeals also reversed this finding. FHP correctly contends, however, that the only issue on certiorari is whether the court of appeals applied the correct standard of review, and we do not address any other issues.

5. The court of appeals did recognize, however, that it had recently stated in *VanLeeuwen v. Industrial Commission*, 901 P.2d 281 (Ct.App.), *cert. denied*, 910 P.2d 426 (Utah 1995), that an agency's application of the law to the facts should be upheld " 'unless its determination exceeds the bounds of reasonableness and rationality.' " The court, however, refused to resolve the apparent conflict between the standards but indicated instead that the result in this case would be the same under either standard. *Drake*, 904 P.2d at 205 n. 2.

of her normal job duties. The Commission argues that this determination is a finding of fact and thus the court of appeals erred in applying a "correction of error" standard applicable to questions of law rather than "the absence of substantial evidence" standard employed for the review of questions of fact. Moreover, because Drake did not challenge any of the Commission's findings of fact, FHP argues that the court of appeals was required to accept the Commission's finding that the deliveries were part of Drake's normal job duties as conclusive and erred when it reviewed it de novo.

 Essential to any determination of the appropriate standard of review for an issue on appeal is the characterization of that issue as either a question of fact, a question of law, or a mixed question requiring application of the law to the facts. Where the issue is purely factual, appellate review is highly deferential, requiring reversal only if a finding is clearly erroneous. *See State v. Thurman*, 911 P.2d 371, 372 (Utah 1996). When reviewing the factual findings made by an administrative agency, an appellate court will generally reverse only if the findings are not supported by substantial evidence. *See Olsen v. Industrial Comm'n*, 797 P.2d 1098, 1099 (Utah 1990); *Helf v. Industrial Comm'n*, 901 P.2d 1024, 1026 (Utah.Ct.App. 1995); *see also* Utah Code Ann. § 63–46b–16(4)(g). We give deference to the initial decision maker on questions of fact because it stands in a superior position from which to evaluate and weigh the evidence and assess the credibility and accuracy of witnesses' recollections. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994). Where the issue is a question of law, however, appellate review gives no deference to the trial judge's or agency's determination, because the appellate court

has "the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction." *Id.* (citation omitted). The reviewing court therefore applies a "correctness" standard, deciding the matter for itself. *Id.* However, not all issues fall clearly at one end of the spectrum or the other. Some issues involve mixed questions of "whether a given set of facts comes within the reach of a given rule of law." *Id.* Although we review the underlying empirical facts under a deferential clear error standard, we have recently stated that the legal effect of those facts "is the province of the appellate courts, and no deference need be given a trial court's resolution of such questions of law." *State v. Vincent*, 883 P.2d 278, 281 (Utah 1994). Nevertheless, in view of our analysis in *Pena*, policy considerations and other factors may "lead this court to define a legal standard so that it actually grants some operational discretion to the trial courts applying it." *Id.* at 282 (citing *Pena*, 869 P.2d at 935–36). As a result, a trial court's or agency's application of the law to the facts may, depending on the issue, be reviewed by an appellate court "with varying degrees of strictness, falling anywhere between a review for 'correctness' and a broad 'abuse of discretion' standard." *Langeland v. Monarch Motors, Inc.*, 307 Utah Adv. Rep. 3, 4, — P.2d —, — (Utah Dec. 31, 1996) (citing *Pena*, 869 P.2d at 936–39).[6]

 In applying these principles to the instant case, although the empirical facts of Drake's case are reviewable for clear error, the conclusion as to whether those facts qualify Drake for workers' compensation benefits under the special errand rule is reviewable for correctness. Because the underlying and historical facts of this case were undisputed,[7]

---

**6.** We recognize that the standard enunciated in *Pena* as applied to an agency's application of the law to a particular set of facts is a departure from our prior decisions. For example, in *State Tax Commission v. Industrial Commission*, 685 P.2d 1051, 1052 (Utah 1984), we stated:

In determining whether the Commission correctly applied the findings of basic facts to the legal rules governing the case, we will uphold the Commission, so long as its decision was reasonable in light of the language of the statute, the purpose it aims to achieve and the public policy behind it.

However, we believe the *Pena* standard is a more accurate measure of the degree of deference to be given to an agency, taking into account factors such as policy concerns and an agency's expertise rather than using undefinable labels such as "reasonableness."

**7.** We are unpersuaded by FHP's arguments that whether Drake's errands were part of her ordinary job duties is a pure question of fact. The determination in this case is not, as FHP argues, what Drake did each day, for it is undisputed that Drake actually delivered the referrals two to

our inquiry focuses on the degree of discretion that the legal standard for the special errand rule bestows upon the Commission. In other words, how closely should this court review the Commission's conclusion that a given set of facts does or does not constitute a "special errand"? Given the nature of the legal issue, we conclude that the legal standard is one that "conveys a measure of discretion to [the Commission] when applying that standard to a given set of facts." *Pena,* 869 P.2d at 939.

■ Scope-of-employment issues are in general highly fact-dependent. Indeed, our prior case law recognizes that "whether or not the injury arises out of or within the scope of employment depends upon the particular facts of each case." *State Tax Comm'n,* 685 P.2d at 1053. Whether an employee was injured while on a special errand is also highly fact-sensitive. As a result, we are less inclined to formulate and impose a fact-specific rule of law because of the likelihood that no rule can be formulated that will adequately address all potential facts in these cases. *See Pena,* 869 P.2d at 939. Thus, this is a question that "we cannot profitably review de novo in every case because we cannot hope to work out a coherent statement of the law through a course of such decisions." *Id.* at 938 (describing why deference needs to be given to trial court when applying highly fact-dependent doctrine of waiver to set of facts); *see also Trolley Square Assocs. v. Nielson,* 886 P.2d 61, 65 (Utah.Ct.App.1994) (holding that broadened grant of discretion should be given to trial court on application of equitable estoppel doctrine to varying facts).

In addition, this court has had few occasions to address particular fact situations to which the special errand rule arguably applies. It is therefore even more unlikely that we could "spell out in detail a legal rule that will adequately anticipate the facts that should be outcome determinative if the policy of the legal rule is to be served." *Vincent,* 883 P.2d at 282 (citing *Pena,* 869 P.2d at 939). This consideration should not, however, preclude an appellate court from narrow-

ing the deference given to the Commission once a serviceable standard has emerged.

■ While we are therefore disposed to give heightened deference to the Commission, policy considerations compel us to exercise some scrutiny. The Workers' Compensation Act was enacted to provide economic protection for employees who sustain injuries arising out of their employment, therefore "alleviat[ing] hardship upon workers and their families." *Baker v. Industrial Comm'n,* 17 Utah 2d 141, 405 P.2d 613, 614 (1965). We have held that "[t]o give effect to that purpose, the Act should be liberally construed and applied to provide coverage" and that "[a]ny doubt respecting the right of compensation will be resolved in favor of the injured employee." *State Tax Comm'n v. Industrial Comm'n,* 685 P.2d 1051, 1053 (Utah 1984).

With this standard in mind, we now turn to the instant case and determine whether the court of appeals, despite enunciating the wrong standard of review, nevertheless arrived at the correct result.

■ As noted previously, this court has had few occasions to review the special errand exception; only one decision offers any lengthy discussion. That case, *State Tax Commission v. Industrial Commission,* 685 P.2d 1051 (Utah 1984), concerned an employee who was injured on her way to a two-month training seminar. The issue was whether her travel was excepted from the general rule that injuries suffered while going to or from work are not within the course of employment and thus not compensable under workers' compensation laws. *See Higgins v. Industrial Comm'n,* 700 P.2d 704, 707 (Utah 1985). This general "coming and going" rule arose because, "in most instances, such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." 82 Am.Jur.2d *Workers'*

---

three times a week. The Commission had to decide whether these activities fall under the

legal rule termed "special errands," which requires some legal analysis.

*Compensation* § 296 (1992).[8] We noted in *State Tax Commission,* however, that the emergent trend in cases dealing with injuries that occur during an employee's travel to employment-related educational seminars or training programs is to find an employment connection if the travel can be deemed an "act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered." 685 P.2d at 1054 (citing 1A Arthur Larson, *Larson's Workmen's Compensation Law* § 27.00 (1982)). We also cited to the rule set forth in *Dimmig v. Workmen's Compensation Appeals Board,* 6 Cal.3d 860, 101 Cal.Rptr. 105, 111, 495 P.2d 433, 439 (1972), which dealt with a similar situation:

> The rule which emerges ... is that when the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer, any injury suffered while traveling to and from the place of such activity is also within the course of employment and is compensable.

The instant case, however, presents a different situation than traveling to a training program or educational seminar, which is more appropriately labeled a "special activity" or an "outside activity at employer's request." Although an employee should still show that the activity was incidental to the employment and that it was undertaken for the benefit and under the direction of the employer, we think more legal guidance must be given when considering whether an actual errand, which has been undertaken two or three times a week for several months, may still be deemed "special."

■■■ Other jurisdictions, in determining whether an errand on the way to or from work was a "special errand," have focused on the language in section 16.11 of Larson's treatise:

When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Arthur Larson, *Larson's Law of Workmen's Compensation* § 16.11, at 4–204 (1996) (citations omitted).

■■■ Larson goes on to explain several variables that the case law indicates may be useful in resolving difficult cases. *Id.* § 16.13, at 4–208.23 to 4–208.27. First, the court must consider the "relative regularity or unusualness of the particular journey." Larson explains that "if [the journey] is relatively regular, whether every day, ... or at frequent intervals, ... the case begins with a strong presumption that the employee's going and coming trip is expected to be no different from that of any other employee with reasonably regular hours and place of work." *Id.* at 4–208.24 to 4–208.26. Indeed, in *Lundberg v. Cream O'Weber/Federated Dairy Farms, Inc.,* 24 Utah 2d 16, 465 P.2d 175, 176 (1970), we declined to find that an employee had engaged in a special errand where the activity, travel to an early morning meeting, was not an "unusual occurrence."

■■■ Second, the relative burden or "onerousness" of the journey on the employee should be compared with the extent of the task to be performed at the end of the journey. Larson, *supra,* § 16.13, at 4–208.26. Larson provides the following example:

> If a janitor walks five blocks to spend two hours working at a church in the evening, it would be difficult to conclude that the journey is a significant part of the total service. But if a janitor makes a longer

---

8. We stated in *Whitehead v. Variable Annuity Life Insurance Co.,* 801 P.2d 934, 937 (Utah 1989), that "the major focus in determining whether or not the general [coming and going] rule should apply ... is on the benefit the employer receives and his control over the conduct." However, that case dealt with the liability of the employer in tort for his employee's acts. Although the control the employer exercises and the benefit the employer receives are factors, we do not think that either is necessarily decisive.

journey merely to spend one instant turning on the lights, it is easier to say that the essence of the service was the making of the journey.

*Id.* The "onerousness" of the journey takes into account not only the length of the journey, but also any other circumstances under which it is made, e.g., conditions of travel, time of day, or day of week.

Third, although not present in this case, the suddenness of the assignment from the employer should also be considered. *Id.* For example, if an employee must suddenly drop everything to travel at the employer's request, then that indicates that the travel itself could be part of the service rendered. *Id.* Although the urgency of the travel is not decisive on its own, all these factors are to be considered in the overall analysis of "whether the journey was itself a substantial part of the service for which the claimant was employed and compensated." *Id.*

FHP contends, and the Commission agreed, that Drake's delivery of the referrals was insufficiently "special." The Commission, without elaboration, found that the deliveries were performed according to routine and thus had become a regular part of her work activities. Under the standard enunciated above, we defer to the Commission's decision and accord a strong presumption that the deliveries were not "special."

The court of appeals held, however, that the regularity of the travel was not a conclusive factor. It relied on *State Tax Commission*, 685 P.2d at 1054–55, where we granted benefits to an employee who had been traveling the same journey every day for two months. However, the employee in *State Tax Commission* was traveling to a one-time training seminar. Without any evidence that FHP planned to change its existing delivery system in the near future and thus relieve Drake of delivery duty, we do not regard *State Tax Commission* as controlling on this issue. The court of appeals also cited *Avila v. Pleasuretime Soda, Inc.*, 90 N.M. 707, 568 P.2d 233 (App.1977), wherein the New Mexico Court of Appeals granted compensation to an employee who was injured on her way home from making a night deposit, a task she performed every workday, finding that it

constituted a special errand. Although this case is helpful, we do not find its rationale to be dispositive. Even though the *Avila* court noted that the night deposits were an everyday occurrence, it was persuaded by other factors, mainly that the employee had to make a deviation from her personal route home to make the deposits. In citing sections 19.36 and 19.37 of Larson's treatise, dealing with business detours from personal trips and the return from business detours, the court found that because the employee was injured while making her way back from the business detour to her personal route, the injuries were incurred within the "scope and course of her employer's business." *Id.*, 568 P.2d at 234, 236.

The parties in this case have not referenced these sections of Larson's treatise on deviations, and it is not clear that this issue was a central one for the Commission. In any event, we are persuaded on balance that we should defer to the Commission's decision that the deliveries were not "special errands" at all but were part of Drake's regular duties. As a result, she did not "deviate" from her normal route home when she drove to the Ogden office, but rather, on two or three days a week, her normal route home started from there. Moreover, we cannot say that the five or six miles added to the journey were substantial enough to make the journey a significant part of the service. As a result, the injuries that Drake suffered after she left the Ogden offices were those to which any member of the traveling public was subject "rather than any risks or hazards having to do with and originating in the work or business of the employer." The court of appeals' decision is therefore reversed.

ZIMMERMAN, C.J., and HOWE and RUSSON, JJ., concur.

STEWART, Associate C.J., dissents.