2011 UT App 91

**Grant L. SMITH, Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, Respondent.**

**No. 20110094–CA.**

Court of Appeals of Utah.

March 24, 2011.

Grant L. Smith, Portage, Petitioner Pro Se.

Jaceson B. Maughan, Salt Lake City, for Respondent.

Before Judges DAVIS, VOROS, and ROTH.

DECISION

PER CURIAM:

¶1 Petitioner Grant L. Smith seeks judicial review of the Workforce Appeals Board's (Board) decision establishing a fault overpayment of unemployment benefits based upon his failure to report receipt of Social Security benefits. Smith does not dispute that his weekly benefit amount should have been reduced beginning with the week for which he began receiving Social Security benefits and does not dispute the calculation of an overpayment. He also does not dispute that he did not contact the Department of Workforce Services (Department) when he began receiving Social Security checks. He claims that because he notified the Department when he applied for Social Security benefits, advised them that he expected to receive benefits

within thirty to sixty days, and provided an estimated amount, he was not at fault in the creation of the overpayment.

■ ¶ 2 A fault overpayment must be supported by proof of all three of the elements of materiality, control, and knowledge. Materiality is established if "[b]enefits were paid to which the claimant was not entitled." Utah Admin. Code R994–406–301(1)(a). Control is established if "[b]enefits were paid based on incorrect information or an absence of information which the claimant reasonably could have provided." *Id.* R994–406–301(1)(b). Knowledge is established if "[t]he claimant had sufficient notice that the information might be reportable." *Id.* R994–406–301(1)(c). In contrast, a nonfault overpayment exists if a "claimant followed all instructions and provided complete and correct information ... and then received benefits to which he or she was not entitled due to an error made by the Department or an employer." *Id.* R994–406–201. "A claimant has an obligation to read material provided by the Department and to ask a Department representative if he or she has a question about what information to report." *Id.* R994–406–401(1)(b).

■ ¶ 3 We will reverse an administrative agency's findings of fact "only if the findings are not supported by substantial evidence." *Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997). We will not disturb the Board's conclusion regarding the application of law to facts unless it "exceeds the bounds of reasonableness and rationality." *Nelson v. Department of Emp't Sec.,* 801 P.2d 158, 161 (Utah Ct.App.1990). The Board concluded that the elements of a fault overpayment had been established. The Board concluded that materiality was established because Smith received benefits to which he was not entitled. The Board next concluded that the element of control was established because Smith could have notified the Department when he began receiving Social Security benefits. Finally, the Board concluded that Smith "knew or should have known that he was required to inform the Department that he was receiving Social Security benefits." The Board cited instructions in the Claimant Guide warning claim-

ants "that they are required to contact the Department if they apply for or start receiving any type of retirement or disability retirement income." The Board agreed with the Administrative Law Judge (ALJ) that Smith's claim that a Department representative told him receiving Social Security benefits would not affect his unemployment benefits was not credible. Furthermore, the Board concluded that the language in the Claimant Guide "should have alerted [Smith] that he was required to contact the Department once he started receiving Social Security checks." The Board therefore concluded that the knowledge element for a fault overpayment was satisfied.

¶ 4 Smith testified at the hearing before an ALJ that he was told by an unidentified Department representative that receipt of Social Security benefits would not result in a reduction of his unemployment benefits. However, he conceded that in the same conversation he asked about borrowing from his 401(k), which would not affect his benefits, and that he may have misunderstood that Social Security benefits would be treated differently. The ALJ found that Smith "did not contact the Department after he received his first Social Security check because he thought he had been told it would not be an issue on his claim." Before the Board, Smith also claimed that he provided all the information that was required of him by notifying the Department in January 2010 that he might be eligible for Social Security benefits within thirty to sixty days. The Board concluded that it was not likely that a Department representative would have told Smith that Social Security benefits would not affect his weekly benefit amount. Furthermore, the Board concluded the language in the Claimant Guide should have alerted Smith "that he was required to contact the Department once he started receiving Social Security checks." Until Smith actually began receiving Social Security benefits, he could not have provided the complete information needed to determine the resulting reduction of his benefits.

¶ 5 To establish that the overpayment should be a nonfault overpayment, Smith would need to demonstrate that he provided

"complete and accurate information" about his receipt of Social Security benefits and that his receipt of excess unemployment benefits was the result of an error made by the Department. Under the facts of this case, Smith's overpayment was properly considered to be a fault overpayment. Accordingly, we affirm.