IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Terrie Daybell, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner, | ) | Case No. 20110073-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 16, 2012) |
| Department of Workforce Services, | ) | |
| Workforce Appeals Board, | ) | 2012 UT App 229 |
| | ) | |
| Respondent. | ) | |

-----

Original Proceeding in this Court

Attorneys:     Blain H. Johnson, Ogden, for Petitioner
                      Suzan Pixton, Salt Lake City, for Respondent

-----

Before Judges Voros, Thorne, and Christiansen.

VOROS, Associate Presiding Judge:

¶1     Petitioner Terrie Daybell seeks judicial review of a decision of the Workforce Appeals Board requiring her to repay unemployment benefits she received and imposing a civil penalty for fraud in the aggregate amount of $21,070. We decline to disturb the Board's decision.

¶2     Daybell was employed full time as a manager for a call center company beginning in 2007, but was laid off due to a reduction in force in early 2009. She filed a claim for unemployment insurance benefits with the Department of Workforce Services on March 9, 2009 and started receiving benefits the week ending March 21, 2009. From that date through February 6, 2010, Daybell received more than $21,000 in

unemployment benefits. While receiving unemployment benefits, Daybell worked as a mortgage loan officer for Key West Funding, Inc., a mortgage brokerage.[1] Daybell considered herself to be an independent contractor, not an employee of Key West.[2] Key West paid Daybell's commissions to a corporation created by Daybell for tax purposes.

¶3      On advice of her accountant, Daybell did not pay herself from the corporation until the end of 2009. During 2009, Daybell earned $28,575 in commissions from her mortgage business. She deducted $25,207 in business expenses for 2009, and paid herself the remaining $3,368. Daybell's business expenses included approximately $700 per month paid to "independent contractors"—including her children—for cleaning her home office and distributing business cards, as well as dining and other expenses in varying amounts.

¶4      When she initially filed for unemployment benefits in March 2009, Daybell disclosed to the Department that she worked part-time as a mortgage loan officer five hours a week. She reported that she had made no money from that work since the end of 2007. She did not disclose that she had generated $7,209 in commissions from Key West in the previous two months. In September 2009, Daybell applied for an extension of benefits. She again reported that she had made no money from her work as a mortgage loan officer. At that point, Daybell had generated commissions totaling $22,026, all paid to her corporation. In automated reports filed each week during the period she received unemployment benefits, Daybell answered "no" to the question "[d]uring the week, did you work?" However, Daybell originated fifteen loans during that period. These loans were the source of her commissions.

---

[1]Daybell had worked as mortgage loan officer for Key West on at least a part-time basis since 2003.

[2]Key West paid Daybell commission as an independent contractor for loans she originated. The Department determined, based on an audit it conducted around late 2009 or early 2010, that all mortgage loan officers working for Key West were in fact employees. Accordingly, commissions Daybell earned in 2009, totaling $28,575.05, were deemed wages. Key West did not appeal that decision. Stearns Lending, which purchased Key West in early 2010, changed Daybell's tax status to that of an employee in March 2010.

¶5 The Department issued a decision on March 25, 2010. The decision disqualified Daybell from receiving benefits, established an overpayment of $21,269, and assessed a civil penalty in the same amount. The decision was based on the ground that Daybell had failed to accurately report her work and earnings, thereby knowingly withholding material information in order to receive benefits to which she was not entitled. This decision left Daybell owing the Department $42,538.

¶6 A series of appeals followed. In the course of the proceedings, Daybell participated in two hearings before two separate Administrative Law Judges. The first ALJ affirmed the disqualification and penalty on the basis that Daybell had not timely appealed. The Board, however, reversed that decision and reduced the overpayment and penalty to $2,928. Daybell then requested reconsideration of this decision, specifically asking the Board to recalculate the overpayment amount based on figures she had reported in tax filings. The Board determined on reconsideration that there was insufficient evidence in the record to support its original decision, and remanded the case to a second ALJ to "hold a new hearing, take additional testimony, and admit additional documents" concerning Daybell's deductions and income from her activities as a mortgage loan officer.

¶7 The second ALJ determined, based on the Department's audit of Key West—newly discovered by the ALJ—that Daybell was an employee of Key West and thus not self-employed. The ALJ affirmed the prior disqualification but modified the overpayment and penalty to a combined total of $21,070. Daybell appealed that decision to the Board. In November 2010, the Board affirmed the second ALJ's decision in its entirety, and later denied her request for reconsideration. This decision left Daybell owing a total of $21,070 for the repayment and penalty. Daybell now challenges the Board's November 2010 decision.

¶8 Daybell challenges the decision on three grounds. First, she contends that the second ALJ exceeded his authority by reconsidering the question of Daybell's employment status on remand. Second, she contends that the Board should have determined that her claimed deductions and write-offs were reasonable, regardless of her employment status. Third, she contends that the Board's finding of fraud is not supported by substantial evidence. We will reverse an administrative agency's findings of fact "only if the findings are not supported by substantial evidence." *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997). We will disturb the Board's

application of law to facts only if it "exceeds the bounds of reasonableness and rationality." *Nelson v. Department of Emp't. Sec.*, 801 P.2d 158, 161 (Utah Ct. App. 1990) (internal quotation marks omitted).

¶9     Daybell first contends that when the Board remanded her case for a new hearing before a second ALJ, the purpose of the remand was narrow. She quotes the Board's decision: "Additional testimony and documentary evidence is needed to show the deductions and write-offs which reduced [Daybell's] gross income from $28,575.05 to $3,368 . . . and how they relate to [Daybell's] business selling mortgages." Daybell argues that the second ALJ "in effect, overturned the decision of the Board" when he found that Daybell was an employee.

¶10     The Department responds that the ALJ did not exceed his authority because the purpose of the Board's remand was more open-ended. It provided for a new hearing, not a reopening of the previous hearing. According to the Department, "The Board instructed the ALJ to gather additional testimony and additional documents." The Board gave a specific instruction to gather evidence on the issue of deductions and write-offs to "ensur[e] this information was obtained in the new hearing, since it was not adequately covered in the original hearing," and not, the Department argues, to limit the hearing to the issue of Daybell's deductions and income exclusively. Moreover, the Department asserts that the Board "cured any potential defect in the remand" when it subsequently "adopted the ALJ's decision . . . in full," having reviewed the entire record, including the audit on which the ALJ's finding of employment was based.

¶11     Daybell has not demonstrated that the ALJ exceeded his authority on remand. The Board has authority under the Administrative Code to remand a case to the Department or ALJ when appropriate and to request additional information or evidence. *See* Utah Admin. Code R994-508-305(3)–(4). The Board's remand instructions did not explicitly limit what evidence the ALJ could consider in the new hearing. The Department audit—which made specific conclusions as to Daybell's employment status and therefore its treatment of the very income at issue in the hearing—seems well within the scope of the remand. Daybell cites no rule or other authority that would limit the ALJ's consideration of the audit. Accordingly, we decline to disturb the Board's decision on this basis.

¶12 Daybell next contends that she is entitled to a determination that the deductions and write-offs that she claimed in tax filings are reasonable, regardless of whether she was self-employed or employed by Key West. She argues simply, "the analysis is the same." In either case, Daybell asserts, she "would be eligible to have her income reduced by legitimate and reasonable business expenses." Daybell offers no explanation, citations to the record, or legal analysis for this conclusory statement. Because this issue is inadequately briefed, we decline to consider it. *See* Utah R. App. P. 24(a)(9) (setting forth briefing requirements); *Allen v. Friel,* 2008 UT 56, ¶ 9, 194 P.3d 903 ("An appellate court is not a depository in which [a party] may dump the burden of argument and research." (citation and internal quotation marks omitted)); *see also State v. Davie,* 2011 UT App 380, ¶ 16, 264 P.3d 770 ("'Utah courts routinely decline to consider inadequately briefed arguments.'" (quoting *State v. Bryant,* 965 P.2d 539, 549 (Utah Ct. App. 1998))).

¶13 Finally, Daybell contends that throughout the series of appeals and decisions by the first and second ALJs and the Board, all "have continuously ignored the weight of the evidence in finding [Daybell] committed fraud." We review the Board's findings of fact under a substantial evidence standard. *See Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997). The substantial evidence standard requires "more than a mere scintilla of evidence" but "something less than the weight of the evidence." *Grace Drilling v. Board of Review,* 776 P.2d 63, 68 (Utah Ct. App. 1989) (internal quotation marks omitted). Substantial evidence is the "quantum and quality of relevant evidence . . . adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank of Boston v. County Bd. of Equalization,* 799 P.2d 1163, 1165 (Utah 1990) (internal quotation marks omitted). "We give deference to the initial decision maker on questions of fact because it stands in a superior position from which to evaluate and weigh the evidence and assess the credibility and accuracy of witnesses' recollections." *Drake,* 939 P.2d at 181.

¶14 The law requires claimants for unemployment benefits who report false information or omit material information, and who consequently receive benefits to which they are not entitled, to repay the benefits they inappropriately received. *See* Utah Code Ann. § 35A-4-405(5)(c) (Supp. 2009). The law also requires such claimants to pay a civil penalty equal to the benefits the claimant received "by direct reason of [the claimant's] fraud." *Id.* § 35A-4-405(5)(c)(ii). To establish fraud for purposes of disqualification and assessment of a civil fraud penalty, the Department must establish three elements: materiality, knowledge, and willfulness. Utah Admin. Code R994-406-

401(1). However, "[t]he absence of an admission or direct proof of intent to defraud does not prevent a finding of fraud." *Id.* R994-406-401(3); *see also Mineer v. Board of Review*, 572 P.2d 1364, 1366 (Utah 1977) (holding that "the intention to defraud is shown by the claims themselves which contain false statements" and that filing such claims "evidences a purpose or willingness to present a false claim in order to obtain lawful benefits" and thus is a "manifestation[] of intent to defraud").

¶15    Daybell contends that she was "[truthful] and accurate in her representations, both written and verbal." She argues that on "several occasions" she disclosed orally to the Department that she had received commission checks from Key West "but that she had not personally taken any money out of the corporation," and "the Department accepted her verbal report as being sufficient." According to Daybell, a Department representative told her in response to her disclosure that she "did not have a reporting obligation if she did not disburse funds to herself from the corporation." However, Daybell provides no citation to the record that shows any evidence that these communications occurred. This contention is thus inadequately briefed. *See* Utah R. App. P. 24(a)(9) (requiring appellant to provide "citations to . . . parts of the record relied on").

¶16    In addition, the ALJ and the Board found that Daybell was not forthright about her work-related activities or earnings, that the information she did provide to the Department was misleading, and that the Department advised her that she had no reporting obligation *based on* Daybell's misrepresentations. Daybell has not persuaded us that the ALJ's findings are based on evidence insufficient to convince a reasonable mind. *See Johnson v. Board of Review of Indus. Comm'n*, 842 P.2d 910, 911 (Utah Ct. App. 1992). We see nothing unreasonable about a finder of fact disbelieving a claimant who maintains—without corroborating evidence—that the Department advised her that she could collect unemployment benefits while working and sequestering thousands of dollars in commissions in a wholly-owned corporation to be paid out later.[3]

¶17    In sum, Daybell has not shown us that the Board's decision is unsupported by sufficient evidence. Accordingly, we decline to disturb it.

---

[3]Daybell does not challenge the rules or statutes that set the terms by which the Department may base a finding of fraud. Daybell also does not challenge the Department's assertion that the law requires the Department to assess a civil penalty without exercising any discretion.

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

-----

¶18    WE CONCUR:


_____
William A. Thorne Jr., Judge


_____
Michele M. Christiansen, Judge