## No. 19,580.

CARROLL QUELLAND *v.* LEONARD ROY.
(365 P. [2d] 899)

Decided November 6, 1961.

Messrs. GALLIGAN and FOLEY, for plaintiff in error.

Mr. MARTIN P. MILLER, Mr. ROBERT E. LONG, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties by name or as they appeared in the trial court where Quelland was plaintiff and Roy was defendant.

Quelland brought the action for an accounting to determine an amount of money allegedly due to him from Roy based upon an oral agreement between the two. The agreement was that Roy would pay Quelland 1¾% of the gross sales of all products sold on the premises which at one time were operated as a cafe and lounge by both Roy and Quelland as partners. Quelland claimed

that he had been receiving 1¾% of the gross sales from only part of the business being done on the premises. Roy answered, affirmatively setting forth in narrative form his version of the controversy between the partners, which can be characterized as a general denial.

The gist of the answer was that Roy admitted he had paid Quelland on only part of the sales, but that Quelland had received all that was coming to him and that he owed him no additional money. Roy also counterclaimed for a determination of any interest which Quelland claimed as a tenant in common in the ground lease of the property on which the buildings to house the original partnership business were erected.

At the close of plaintiff's case, the court granted Roy's motion for non-suit and dismissed Quelland's claim. This brought an end to the trial, but when the court signed written findings of fact and conclusions of law — prepared by counsel for Roy — the court included in the judgment an order terminating Quelland's interest in the lease as requested in Roy's counter-claim. This was done notwithstanding no trial was had on the counterclaim and no evidence was presented by Roy in support thereof. To the judgment denying his request for an accounting and the money relief sought, and to the judgment divesting him of his interest as tenant in common in the real estate lease, Quelland brings this writ of error.

Quelland and Roy were partners in April 1952, and together they leased from Centennial Properties, Inc., the property in Arapahoe County particularly described in the complaint, the boundaries of which need not be recited in detail. After leasing the real estate the two partners constructed thereon a coffee shop and cocktail lounge which they operated. Thereafter they orally agreed to dissolve their partnership and came to terms whereby Roy would take over the operations of the coffee shop and lounge and pay to Quelland for the

duration of the lease $1\frac{3}{4}\%$ of the gross sales from the business being done on the premises. Both parties admit the oral agreement, but they differ as to the sales upon which the $1\frac{3}{4}\%$ payment was to apply. At the time of the agreement there were only two buildings, one occupied by the coffee shop and the other by the cocktail lounge, both businesses using a common entrance way. Upon the gross sales of these two business entities both agree the percentage has been paid without dispute or interruption.

After acquiring full proprietorship of the business, Roy built an addition of two other rooms to the premises. One became known as the "Tap Room" and the other as the "Dining Room." The operation of the coffee shop and dining room was sublet to others by Roy. The subtenant has, in accordance with Roy's agreement, which was incorporated in the sublease, paid to Quelland $1\frac{3}{4}\%$ of the gross sales from food in both the coffee shop and the dining room. Roy has continued to pay $1\frac{3}{4}\%$ of the gross sales in the lounge, but has refused to pay the percentage on the sales in the tap room and on the sale of liquor in the dining room.

There was no dispute in the facts, and the court had only before it the determination of the law applicable to Quelland's claim for contribution from the proceeds of the entire capital outlay as represented by the four buildings on the admitted fact that his capital contribution was limited to the construction of the first two buildings.

The conclusion of the court that Quelland was not entitled to a percentage contribution on the proceeds of business generated from the additional capital invested by Roy alone was correct.

█ The general rule is stated in 55 A.L.R. (2d) 1398:

"It is the generally accepted rule that one claiming an interest in profits earned subsequently to the dissolution of a partnership is, in the absence of a specific agree-

ment, entitled to such share of the profits as his interest bears to the total capital, or, in other words, such share of the profits as can rightly be attributed to the continued use of his property or capital in the business.

\* \* \*

"In accordance with the general rule apportioning the profits according to the capital investment of the partners, profits attributable to new capital contributed by the partner continuing the business need not be accounted for."

At page 1399 it is said:

"The right of a partner to share in the profits earned by the continuation of a partnership business is founded upon the use to which such partner's interest in the capital of the firm has been put in earning these subsequent profits, and if the partner claiming an interest in the profits earned after the dissolution of the partnership has no interest in the assets or capital of the firm after dissolution, he is not entitled to share in the profits earned; \* \* \* "

In the instant case the partners agreed on a percentage of the gross business rather than on profits, but the principle involved is the same; namely, that the partner leaving the business is only entitled to a return on the use of his capital by the continuing partner. The agreement for payment on the gross business over a long period of time as earnings and return of capital does not change the rule as to what interest the retiring partner retains in the enterprise in the absence of an express agreement. It does not entitle him to earnings on the new capital, the investment of which was not shared by him. Therefore, the court's dismissal of Quelland's claim was correct and is affirmed.

On the counter-claim, however, whereby Roy sought to become the owner of the entire lease on the real estate, the judgment of the court cannot be sustained either on the evidence or on the law. As previous-

ly stated, Quelland was a tenant in common on the lease obtained from Centennial Properties, Inc. He can only be divested of that lease-hold by operation of law or by assignment of his interest. The lease provided that he could not assign his interest in the lease without the written consent of the lessor. By virtue of the statute of frauds a claimed assignment of the lease would have to be in writing.

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing." C.R.S. '53, 59-1-6.

Therefore, the only possible way Roy could recover on his counter-claim would be to introduce some evidence which would warrant the conclusion of the court that the law operated to divest Quelland of his interest, or to have presented a written assignment or surrender of the lease.

When Quelland was on the stand to give testimony in support of his claim for percentage, he was cross examined about the lease. Likewise, when Roy was called for cross examination he gave some testimony with reference to the lease. The sum total of all this evidence, however, indicated that during the entire period up to the inception of the litigation between these former partners Quelland has always been considered a joint lessee. For example, in February 1953, after Quelland had orally agreed to turn over the operation of the business to Roy, Roy entered into a sublease of the coffee shop and dining room to parties by the name of Hix and Welborn. He sought and obtained from Quelland his signature as a co-lessor and consent for the

sublease was obtained from the landlord. Subsequently, in November 1953, an amendment to the lease was tendered, and both Roy and Quelland at that time executed the amendment as co-lessees. Since the landlord, Centennial Properties, Inc., has not consented to relieve Quelland of his obligation as one of the lessees, he is bound to the lessor in that respect. In addition, there was evidence that Quelland's obligation for his share of the rent on the lease has continuously been paid by contribution from the sublessee. This is the only evidence touching on defendant's counter-claim. After Roy's motion for dismissal of Quelland's claim, he did not go forward with evidence in support of his counter-claim, hence there was nothing before the court to support a judgment in his favor.

That portion of the judgment divesting Quelland of his interest in the lease is reversed and the cause remanded with directions to the court to dismiss the counter-claim.

MR. JUSTICE MOORE and MR. JUSTICE MCWILLIAMS concur.