Keith MacKAY and State
Stone Inc., Plaintiffs,

v.

Roy E. HARDY, J. Earl Jones, Bloomington Knolls Association, a Utah nonprofit corporation, Rex L. Jackson, a Utah limited partnership, and Rex Jackson, an individual, Defendants.

J. Earl JONES, Cross–Claim
Plaintiff and Appellee,

v.

Roy E. HARDY and Rex Jackson, Cross–Claim Defendants and Appellants.

No. 940058.

Supreme Court of Utah.

May 18, 1995.

James L. Barker, Salt Lake City, for Jones.

D. Williams Ronnow, Timothy A. Bodily, John J. Walton, St. George, for Hardy, Jackson, and Rex L. Jackson, Ltd.

J. MacArthur Wright, St. George, for Bloomington Knolls Assoc.

ZIMMERMAN, Chief Justice:

J. Earl Jones brought this cross-claim against Roy E. Hardy and Rex L. Jackson for an accounting and wind-up of a dissolved partnership pursuant to sections 48–1–34 and 48–1–40 of the Utah Code. The district court awarded Jones $76,673.23 for his interest in the partnership. Hardy and Jackson now contend that the district court erred in (i) concluding that the partnership held an equitable interest in forty-two lots subject to a lease held by Bloomington Knolls Association, (ii) valuing the partnership's interest in each of the forty-two lots at $3,500, and (iii) awarding Jones post-dissolution profits realized by the partnership on Jones' share of partnership assets. We affirm the district court's equitable-interest conclusion and valuation of the partnership's interest in the lots, reverse its award of post-dissolution profits, and remand for further proceedings consistent with this opinion.

Sometime in 1983, Jones and Hardy entered into an oral partnership agreement for the purpose of developing certain land located in Washington County, Utah, and owned by the state. Jones and Hardy planned to lease the proposed development site from the state and, accordingly, submitted a lease application to the Utah Division of State Lands and Forestry ("Division"). In response to this application, the Division required Jones and Hardy to form a corporation which would lease the site directly from the state as one parcel. In compliance with the Division's requirement, Jones and Hardy formed a nonprofit, nonstock corporation called Bloomington Knolls Association ("BKA"). Shortly thereafter, the state issued Special

Use Agreement No. 593 ("agreement"), leasing the development site to BKA for fifty-one years and granting BKA the right to renew its lease for an additional fifty-one years.[1]

The development proceeded in three phases. During phase I, twenty-six of the seventy-three undeveloped lots comprising the development site were subleased to individuals, each for a term of fifty-one years and each in exchange for $3,750. Pursuant to written sublease agreements, $3,500 was to pay for off-site improvements and common area amenities and $250 was to be paid to the state, as required by the agreement. Although phase I was not designed to turn a profit, Jones and Hardy intended that it would generate sufficient income to meet the phase I development costs. In fact, however, phase I failed to generate sufficient funds to defray those costs.

Consequently, in June of 1986, the Jones/Hardy partnership began to experience financial problems. To alleviate these problems, Jones and Hardy associated Rex L. Jackson as a partner. Jackson received a 50% interest in the partnership in exchange for his agreement to arrange additional financing for the project. Jones' and Hardy's respective interests in the partnership were reduced to 25%.

The project proceeded under the Jones/Hardy/Jackson partnership until June 27, 1988, when Jones dissolved the partnership and requested that he be given subleases to fourteen lots as his share of partnership assets. Although the partnership had sustained losses totalling $46,800.99 as of the date of dissolution, forty-two of the original seventy-three lots had not been subleased and remained in BKA's inventory. Jones' request was not honored, and he never received any assets of the partnership. From the date of dissolution in 1988 until the pro-

ject was completed in approximately December of 1992, the project continued under the direction of Hardy and Jackson.

Jones brought this cross-claim for an accounting and winding up of partnership affairs pursuant to sections 48–1–34 and 48–1–40 of the Utah Code. After a four-day bench trial, the district court entered judgment against Hardy and Jackson, jointly and severally, for $76,673.23, an amount the district court concluded represented Jones' interest in the partnership. In reaching this conclusion, the district court found and reasoned as follows: (i) BKA was "merely a straw man" of the Jones/Hardy/Jackson partnership formed at the state's request for the sole purpose of permitting the partnership to obtain and hold a lease of the development site from the state; (ii) therefore, the partnership held an equitable interest in the forty-two lots remaining in BKA's inventory at the time of dissolution; (iii) the value of the partnership's interest in each of the forty-two lots at the time of dissolution was $3,500; (iv) the value of Jones' corresponding interest in the forty-two lots at the time of dissolution totalled $36,750; (v) Jones' share of partnership losses on the date of dissolution was $11,700.24; [2] (vi) the value of Jones' net interest in the partnership at the time of dissolution was $25,049.76; (vii) Jones' net interest in the partnership at the time of dissolution was equivalent to 7.15 lots, each valued at $3,500.00; (viii) each of the forty-two lots remaining in BKA's inventory at the time of dissolution was sold for a profit of $10,723.35; and (ix) therefore, "[t]he interest of J. Earl Jones in the partnership is $76,673.23, which is the sum of his share of partnership assets plus his share of the profits realized by the Jones–Hardy–Jackson partnership by using his share of the assets." [3] Hardy and Jackson appeal.

1. The agreement was amended in 1988 to add acreage to the development site.

2. The district court expressly found that Jones' 25% share of partnership losses, which totalled $46,800.99, amounted to $11,724. Actually, however, 25% of $46,800.99 is $11,700.24. Nonetheless, in subsequently calculating the value of Jones' net interest in the partnership on the date of dissolution, the court properly subtracted $11,700.24 from the value of Jones' interest in

partnership assets. Because the court's final judgment was not affected by its mathematical (or perhaps typographical) error, we do not address it further.

3. Jones is entitled by statute to receive both his share of partnership assets at the time of dissolution and any post-dissolution profits realized by the partnership on his share of partnership assets. Utah Code Ann. § 48–1–39. Although the district court did value Jones' net interest in the

■ We first address Hardy and Jackson's contention that the district court erred in concluding that the partnership held an equitable interest in the forty-two lots remaining in BKA's inventory at the time of dissolution. Although this court may fashion its own remedy as a substitute for the judgment of the trial court in equity cases, we will disturb the trial court's judgment only where necessary to prevent manifest injustice. *Penrose v. Penrose*, 656 P.2d 1017, 1019 (Utah 1982); *Jackson v. Jackson*, 617 P.2d 338, 340 (Utah 1980). Moreover, we will not reverse the findings of fact of a trial court sitting without a jury unless they are " 'against the clear weight of the evidence,' thus making them 'clearly erroneous.' " *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)); *cf. State v. Pena*, 869 P.2d 932, 939 n. 4 (Utah 1994) (" 'We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard.' " quoting *State v. Brown*, 853 P.2d 851, 855 (Utah 1992))).

■ Applying these principles to the instant case, we do not think that either the district court's equitable-interest conclusion or the factual finding underlying that conclusion warrants reversal. The factual predicate underlying the district court's equitable-interest conclusion, i.e., that BKA "was mere-

ly a straw man" formed at the state's request for the sole purpose of obtaining a lease of the development site, was established by the uncontradicted testimony of both Jones and Hardy. Therefore, we cannot conclude that this finding was clearly erroneous.

Likewise, we do not believe that reversal of the district court's equitable-interest conclusion is necessary to prevent manifest injustice. "Equity regards the substance rather than the form of a transaction...." *Powell v. Bastian*, 541 P.2d 1127, 1131 (Utah 1975) (Maughan, J., dissenting); *see also Erickson v. Beardall*, 437 P.2d 210, 212 (Utah 1968) ("[I]t is the duty of the court to look to substance rather than to form."). Accordingly,

> [w]here a corporate form is resorted to as an instrumentality of a partnership, the corporate form may be disregarded upon the dissolution of the partnership. This may be done by declaring the property in the name of the corporation to be assets of the partnership and making the distribution of property directly to the partners in the dissolution of the partnership.

*McDonald v. McDonald*, 53 Wis.2d 371, 192 N.W.2d 903, 910 (1972) (citing *Fortugno v. Hudson Manure Co.*, 51 N.J.Super. 482, 144 A.2d 207 (App.Div.1958)). This is precisely what the district court did in the instant case. Therefore, we decline to reverse the district court's equitable-interest conclusion.[4]

---

partnership at the time of dissolution, the court apparently awarded Jones only the post-dissolution profits attributable to that interest and did not include the underlying interest itself in the award. However, Jones does not raise this issue on appeal, and we therefore decline to consider it. *Cf. SEMECO Indus., Inc. v. Auditing Div. of Utah State Tax Comm'n*, 849 P.2d 1167, 1169 (Utah 1993) (declining to address contention only vaguely referenced in party's brief and not supported by argument or analysis).

**4.** Hardy and Jackson also argue that the district court's equitable-interest conclusion should be reversed because it was based on a conclusion of law stating that BKA was the "alter ego" of the partnership. Hardy and Jackson contend that no alter ego issue was before the district court and that even if the district court could properly have addressed the issue, its conclusion was not supported by sufficient evidence because a finding of alter ego has fixed elements, some of which are absent here. *See Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030

(Utah 1979) (holding that to disregard a corporate entity under the alter-ego doctrine, "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist ...; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow"); *see also Envirotech Corp. v. Callahan*, 872 P.2d 487, 499 (Utah Ct.App.1994).

Contrary to Hardy and Jackson's assertion, however, we do not believe that the district court's stated alter ego conclusion played any part in its decision to treat BKA's assets as those of the partnership. In fact, the words "alter ego" do not appear anywhere in the record until after the district court found from the bench that as a part of the partnership agreement reached between Mr. Jones, Mr. Hardy and Mr. Jackson, because this is the way that they operated and did business, that BKA, for the purpose of distribution of the lots to the eventual purchasers, was strictly a strawman and that *the equi-*

Hardy and Jackson argue further that even if the district court properly concluded that the partnership held an equitable interest in the forty-two lots, its valuation of the partnership's interest in each of those lots at $3,500 was clearly erroneous and should therefore be reversed. We disagree.

During trial, Hardy and Jackson's accounting experts testified that under generally accepted accounting principles, one proper measure of an asset's fair market value is its historical cost. Uncontradicted evidence established that the first twenty-six undeveloped lots were each subleased for $3,750. Hardy and Jackson argue that because $3,500 of the cost of each sublease was to pay for off-site improvements and common area amenities pursuant to written sublease agreements, each sublessee actually paid only $250 for the sublease itself. However, common sense belies this assertion. The fact that a portion of the cost of a sublease is earmarked for a particular purpose does not change the cost of the sublease. In the instant case, the first twenty-six lots were each subleased for a cost of $3,750. This cost is not affected by how the money was to be spent. We therefore affirm the district court's valuation of the partnership's interest in the forty-two lots.[5]

Finally, we address Hardy and Jackson's contention that the district court erred in awarding Jones post-dissolution profits realized by the partnership on Jones' share of partnership assets. Pursuant to section 48–1–39 of the Code, Jones is entitled to "receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option ..., in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership." Utah Code Ann. § 48–1–39. Jones has elected to receive profits in lieu of interest on his share of partnership assets.

In calculating the post-dissolution profits attributable to Jones' share of partnership assets, the district court found that Jones' net interest in the partnership at the time of dissolution was equivalent to 7.15 lots and that each of those lots was eventually sold for a profit of $10,723.35. Accordingly, the district court awarded Jones $76,673.23 in post-dissolution profits. See supra note 4. Hardy and Jackson now contend that the district court erred in failing to consider their alleged post-dissolution capital contributions and services in calculating the post-dissolution profits to which Jones is entitled. Therefore, this case presents the question of whether profits attributable to post-dissolution capital contributions and services are "profits attributable to the use of [an ex-partner's] right in the property of [a] dissolved partnership" within the meaning of section 48–1–39.[6]

Because this is a question of statutory interpretation, we accord the district court

table interest in all of these leases resided in the partnership interest, in the partnership itself. (Emphasis added.) We conclude that the district court relied only on the equitable-interest doctrine discussed in the text and that the alter ego statement was the superfluous result of counsel's drafting of findings of fact and conclusions of law. We therefore decline to address the merits of Hardy and Jackson's arguments related to the district court's alter ego conclusion.

5. Under our analysis, the district court undervalued the partnership's interest in the forty-two lots by $250 each. Although Jones would have benefitted from a proper valuation, he does not raise this issue on appeal, and we therefore decline to consider it. Cf. SEMECO, 849 P.2d at 1169.

6. In full, section 48–1–39 provides as follows:
When any partner retires or dies and the business is continued under any of the conditions set forth in Section 48–1–38(1), (2), (3),

(5), (6), or Section 48–1–35(2)(b) without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representatives as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representatives, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided, that the creditors of the dissolved partnership as against the separate creditors or the representative of the retired or deceased partner shall have priority on any claim arising under this section, as provided by Section 48–1–38(8).
Utah Code Ann. § 48–1–39.

no deference. Our review is for correctness. *State v. Lowder,* 889 P.2d 412, 413 (Utah 1994); *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990). "When faced with a question of statutory construction, we look first to the plain language of the statute.... [W]e assume that 'each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.'" *K & T, Inc. v. Koroulis,* 888 P.2d 623, 626–27 (Utah 1994) (quoting *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991)).

Used in its ordinary meaning, "attributable to" confines consideration to that which is "caused or generated by the property in question." *Braunstein v. Commissioner of Internal Revenue,* 374 U.S. 65, 70, 83 S.Ct. 1663, 1666, 10 L.Ed.2d 757 (1963). If Hardy and Jackson did contribute capital and render services to the partnership after dissolution, at least some portion of the partnership's post-dissolution profits was caused or generated by that capital and services and accordingly may be attributed thereto. Any portion of post-dissolution profits so attributable may not, at the same time, be attributed to Jones' share of partnership assets. To do so would run afoul of the plain language and purpose of section 48–1–39. Therefore, the district court erred by failing to consider Hardy and Jackson's alleged post-dissolution capital contributions and services in apportioning the partnership's post-dissolution profits.[7] *See Quelland v. Roy,* 148 Colo. 316, 365 P.2d 899, 901 (1961) (in apportioning post-dissolution partnership profits, "'profits attributable to new capital contributed by the partner continuing the business need not be accounted for'" (quoting L.S. Tellier, Annotation, *Rights in Profits Earned by Partnership or Joint Adventure after Death or Dissolution,* 55 A.L.R.2d 1391, 1398 (1957))); *Timmermann v. Timmermann,* 272 Or. 613, 538 P.2d 1254, 1263 (1975) ("[A] trial court, in determining profits attributable to the use of

a withdrawing partner's right in the property of the dissolved partnership, is entitled to make an equitable allowance for the services of the continuing partners."); *Weisbrod v. Ely,* 767 P.2d 171, 175 (Wyo.1989) ("[W]hen profits earned after dissolution and before a final accounting are attributable in part to the personal skill or services of a partner, it is a factor to be considered in apportioning the shares of the partners.").

Jones argues that the district court's consideration of Hardy and Jackson's alleged post-dissolution services will have the effect of compensating Hardy and Jackson for those services in violation of section 48–1–15(6), which provides, "No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to compensation for his services in winding up the partnership affairs." Utah Code Ann. § 48–1–15(6). We disagree. The only profits to which Jones is entitled under section 48–1–39 are those which are attributable to Jones' share of partnership assets. Utah Code Ann. § 48–1–39. By failing to consider Hardy and Jackson's post-dissolution services, the district court awarded Jones not only those post-dissolution profits attributable to his share of partnership assets, but also those attributable to the efforts of Hardy and Jackson. Jones is not entitled to such a windfall. *See Timmermann,* 538 P.2d at 1263 ("'Although such a method of dividing profits is usually spoken of in terms of providing extra compensation for the managing ex-partner, in reality it merely reflects the statutory requirement that the retired or deceased partner be allowed the profits *attributable* to his right in the assets used in the business.'" (quoting *Vangel v. Vangel,* 45 Cal.2d 804, 809, 291 P.2d 25, 28 (1955))). Therefore, we conclude that section 48–1–15(6) does not prohibit the district court's consideration of Hardy and Jackson's post-dissolution services in apportioning the partnership's post-dissolution profits.

---

7. We note, however, that in apportioning the partnership's post-dissolution profits, the district court properly refused to consider alleged post-dissolution loans taken by the partnership, to the extent those loans were secured by partnership assets in which Jones has an interest. To that extent, profits attributable to the borrowed capital are proportionally attributable to Jones' share of partnership assets. *See Timmermann v. Timmermann,* 272 Or. 613, 538 P.2d 1254, 1262 (1975).

In sum, we affirm the district court's conclusion that the partnership held an equitable interest in the forty-two lots remaining in BKA's inventory at the time of dissolution and its valuation of the partnership's interest in those lots at $3,500 each. However, we reverse the district court's award of post-dissolution profits and remand for further proceedings consistent with this opinion.

STEWART, Associate Chief Justice, and HOWE, DURHAM and RUSSON, JJ., concur.