Keith MacKAY and State Stone,
Inc., Plaintiffs,

v.

Roy E. HARDY and Rex L. Jackson,
Defendants, Appellants, and
Cross–Appellees,

and

The Joseph Earl Jones Family Trust and Carol Anne Earl, aka Carol J. Earl, and Jillyne Nunley, joint trustees, Defendants, Appellees, and Cross–Appellants.

No. 970251.

Supreme Court of Utah.

Dec. 11, 1998.

Weston J. White, F.L. Thomas, Jr., M. Kent Christopherson, St. George, for appellants.

James L. Barker, Salt Lake City, for appellees.

RUSSON, Justice:

## INTRODUCTION

Defendants Roy E. Hardy and Rex L. Jackson appeal for the second time in this case. The original action included a cross-claim by J. Earl Jones [1] against Hardy and Jackson for an accounting and winding up of a dissolved partnership. The district court entered judgment in Jones's favor, and Hardy and Jackson appealed, claiming, inter alia, that the court erred in awarding Jones post-dissolution profits realized by the partnership on Jones's share of partnership assets. That appeal came before this court in 1995. *See MacKay v. Hardy,* 896 P.2d 626 (Utah 1995) (*"MacKay I"*). We remanded the case to the district court to determine the post-dissolution value of services and contributions by Hardy and Jackson, if any, in apportioning the partnership's post-dissolution profits among Hardy, Jackson, and Jones. The district court then found that the total services and contributions to which Jackson and Hardy were entitled equaled $8,355.10, and it amended the original judgment accordingly. Hardy and Jackson appealed from the amended judgment, and Jones cross-appealed. We affirm.

---

1. J. Earl Jones died in February 1998. The Joseph Earl Jones Family Trust and trustees Car-ol Anne Earl and Jillyne Nunley were subsequently substituted as parties.

## BACKGROUND

Our prior opinion sets out the facts of this case in detail. We summarize the pertinent facts necessary to understand the issues raised on this appeal.

In 1983, Jones and Hardy entered into an oral partnership agreement for the purpose of developing land located in Washington County, Utah. In June of 1986, the partnership began experiencing financial problems. Consequently, Jones and Hardy associated Jackson as a partner, giving him a fifty percent interest in the partnership in exchange for his agreement to arrange additional financing for the project. Jones's and Hardy's respective interests in the partnership were reduced to twenty-five percent.

The Jones/Hardy/Jackson partnership continued until June 27, 1988, when Jones withdrew from the partnership.[2] Thereafter, Hardy and Jackson continued to run the business (the "Hardy/Jackson" partnership), which included the development project. Then, in December of 1992, Jones brought a cross-claim[3] for an accounting and winding up of the Jones/Hardy/Jackson partnership affairs pursuant to sections 48–1–34 and 48–1–40 of the Utah Code.

After a four-day bench trial, the district court entered judgment against Hardy and Jackson, jointly and severally, for $76,673.23, an amount which the court concluded represented Jones's interest in the partnership. In their appeal from that judgment, Hardy and Jackson alleged three district court errors warranting reversal. We affirmed in part but reversed and remanded for further proceedings, concluding that "the district court erred by failing to consider Hardy and Jackson's alleged post-dissolution capital contributions and services in apportioning the partnership's post-dissolution profits." *MacKay I*, 896 P.2d at 631. We reasoned that the district court's failure in this regard resulted in an improper windfall to Jones, because it awarded him not only those post-dissolution profits attributable to his share of partnership assets but also those attributable to Hardy's and Jackson's efforts. *Id.*

On remand, the district court heard testimony and received other evidence during several hearings relating to Hardy's and Jackson's post-dissolution contributions and services. During this time, the court had pending before it two separate lawsuits that had been filed against Hardy and Jackson relating to their development project. One suit was filed by Ellen T. Green (the "Green" suit) involving damages caused by the ground settlement problems of a townhouse unit she had purchased from the partnership. The other suit was filed by Heritage Home Furnishings (the "Heritage" suit) involving a stock subscription agreement whereby the partnership could purchase appliances and floor coverings at a discount. The Green and Heritage suits were eventually settled, and Hardy and Jackson argued on remand of this case that the expenses associated with that settlement should be considered in apportioning the partnership's post-dissolution profits.

In its written findings of fact on remand, the district court determined that Jones was not responsible for any costs or expenses relating to the Green and Heritage suits, because neither Jones nor the partnership was a party to those actions. The court also determined that the total post-dissolution capital contributions and services to which Hardy and Jackson were entitled equaled $8,355.10 ($7,002.99 for Jackson and $1,352.11 for Hardy). The court then reduced the original judgment to $75,249.47 and calculated the interest awarded by the original judgment to be $12,957.93.

In this second appeal, Hardy and Jackson claim that the district court committed four errors on remand. Jones cross-appealed, also alleging four errors. We first address

---

2. Jones's withdrawal effectuated a "dissolution" of the partnership, which the Code defines as follows: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business." Utah Code Ann. § 48–1–26 (1998).

3. Jones filed his cross-claim as a co-defendant in an action brought by Keith MacKay and State Stone, Inc., suing Jones and Hardy for work they performed on a project prior to their association with Jackson. That suit was settled in 1993.

the Hardy/Jackson appeal and then discuss Jones's cross-appeal.

## STANDARD OF REVIEW

In reviewing the lower court's post-remand decision regarding Hardy's and Jackson's alleged post-dissolution contributions and services, this court will review the lower court's findings of fact under the clearly erroneous standard and its conclusions of law under a correctness standard. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997). With respect to mixed questions of law and fact, we will review the underlying facts under the deferential clear error standard; however, the legal effect of those facts is within the province of the appellate court, and "no deference need be given a [lower] court's resolution of such questions of law." *Id.*

## ANALYSIS

### I. THE HARDY/JACKSON APPEAL

*A. The District Court's Determination of Hardy's and Jackson's Post–Dissolution Services and Contributions*

Hardy and Jackson first argue that the district court erred in failing to apply the value of their post-dissolution services in apportioning the division of the partnership's net profits. Specifically, they state that the district court found the value of their post-dissolution services to be $320,028.94. However, the district court's written findings of fact on remand reveal that their assertion could hardly be further from the truth.

Addressing Hardy's and Jackson's credibility and the credibility of their evidence on remand, the district court stated in its findings:

2. The *defendants lack any credibility* in now claiming that the Jones–Hardy–Jackson partnership never existed.

3. The exhibits presented by the defendants pursuant to post-remand discovery and hearings were prepared in anticipation of those hearings, after the trial of this

matter, and years after the defendant's exhibits and testimony presented at trial. *Those post-remand exhibits have no credibility* and do not provide the preponderance of proof necessary to show that defendant's [sic] are entitled to credit for *any* post-dissolution services allegedly performed by them. *These post-remand exhibits are in direct conflict with defendants' accounting presented at trial ...* prepared by defendants' accountant which shows that at the time of the [conclusion] of the partnership business the partnership did not owe any money to the defendants or to any other entity.

(Emphasis added.) The court then listed the post-dissolution expenditures that were supported by competent evidence and concluded, "The total post-dissolution capital contributions and services to which defendants are entitled are: Jackson $7,002.99, Hardy $1,352.11." However, the court determined that "*any other claims* of defendants for post-dissolution capital contributions or services *are not supported by credible evidence.*" (Emphasis added.)

The court's findings could not have been more clear, and we cannot comprehend how appellants' attorneys can assert in their brief that "[t]he District Court found the value of [Hardy's and Jackson's] services to be $320,028.34 and then erred in failing to apply them in reapportionment of Jones' share." If a lower court has erred in its written findings of fact, the proper procedure is for the complaining party to challenge those findings on appeal under our clearly erroneous standard of review. *See Drake,* 939 P.2d at 181; *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989). Appellants, however, have not even challenged the lower court's written factual findings on appeal. Therefore, we cannot conclude that those findings were clearly erroneous. Furthermore, the above representation of counsel warrants consideration of whether sanctions and/or disciplinary action is appropriate. *See* Utah R.App. P. 40(b) (1998); Utah R. Prof. Conduct 3.3(a)(1).[4]

4. Rule 40(b) of the Utah Rules of Appellate Procedure provides:

(b) *Sanctions and discipline of attorneys and parties.* The court may, after reasonable notice

## B. The Green and Heritage Lawsuits

Hardy and Jackson next argue that the district court erred in not receiving evidence of the expenses they incurred in settling the Green and Heritage suits.[5] To support their argument that those expenses should have been considered as capital contributions, they rely on section 48–1–15(1) of the Utah Code, which provides, "Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property ... [and] must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits." They also cite section 48–1–15(2), which provides, "The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property."

Jones argues that the Green and Heritage suits were brought after he withdrew from the partnership and that neither he nor the partnership was named as a party to the action. To support his argument that he cannot be held accountable for any of the expenses of the Green and Heritage suits, Jones relies on article I, section 7 of the Utah Constitution, which provides, "No person shall be deprived of life, liberty or property, without due process of law." He also cites to rule 17(d) of the Utah Rules of Civil Procedure, which states, "The separate property of an individual member of the association may not be bound by the judgment unless the member is named as a party and the court acquires jurisdiction over the member."

■ The district court's determination that Jones was not responsible for any of the expenses associated with the Green and Heritage suits is a mixed question of law and fact. We therefore give deference to the court's factual findings but review the court's determination as to their legal effect for correctness. *See Drake,* 939 P.2d at 181.

■ Unfortunately, the real issue and the relevant law have eluded both parties. The dispositive issue is whether the events out of which the Green and Heritage lawsuits arose occurred before or after the Jones/Hardy/Jackson partnership was dissolved. Under general partnership principles, a withdrawing or "outgoing" partner is not liable for partnership debts which arise after dissolution:

> On the dissolution of a partnership by the withdrawal or retirement of a partner, the outgoing partner sustains no further relation to the remaining or continuing partners whereby they can exercise any authority binding on him, in the absence of circumstances giving rise to an estoppel. Thus, a partner is not personally liable for partnership debts where the partnership is dissolved before the inception of the debt, at least where notice of the dissolution is given to third parties who have dealings with the partnership.

59A Am.Jur.2d *Partnership* § 909 (1987); *see also* 1 Reed Rowley, *Rowley on Partnership* § 36.1, at 650 (2d ed. 1960) ("A retiring partner who has given due notice of his retirement is not liable on any obligations of the new firm incurred after his retirement, since the members of the new firm have no power to bind him to a new obligation."); Uniform Partnership Act § 703(a), 6 U.L.A. 88 (1994) ("A dissociated partner is not liable for a partnership obligation incurred after dissociation, except as otherwise provided in subsection (b).").

■ The Utah Code does not expressly address the effect of dissolution on future liabilities; however, it does provide that

and an opportunity to show cause to the contrary, and upon hearing, if requested, take appropriate action against any attorney or person who practices before it for inadequate representation of a client, conduct unbecoming a member of the Bar or a person allowed to appear before the court, or for failure to comply with these rules or order of the court. Any action to suspend or disbar a member of the Utah State Bar shall be referred to the Ethics and Discipline Committee of the State Bar for proceedings in accordance with the Rules of Discipline of the State Bar.

Rule 3.3(a)(1) of the Utah Rules of Professional Conduct provides that a lawyer shall not knowingly "[m]ake a false statement of material fact or law to a tribunal."

5. Hardy and Jackson settled both suits for approximately $12,000 and incurred $23,000 in attorney fees.

"[t]he dissolution of a partnership does not of itself discharge the *existing liability* of any partner." Utah Code Ann. § 48–1–33(1) (emphasis added). The logical implication of this provision is that dissolution discharges an outgoing partner's responsibilities for any future debts or liabilities incurred by remaining partners who continue the business in which the partnership was engaged prior to dissolution.

In the instant action, Jones withdrew from the partnership in June of 1988. The Green suit was filed in September of 1994, and the Heritage suit was filed in April of 1995. Hardy and Jackson have not produced any evidence that would even remotely suggest that these suits arose out of the Jones/Hardy/Jackson partnership business, nor have they alleged circumstances giving rise to an estoppel whereby Jones should be held responsible for the expenses of these lawsuits, which were filed more than six years after the dissolution of the Jones/Hardy/Jackson partnership. The sections of the Utah Code which Hardy and Jackson cite are simply not applicable because there is no evidence that Jones was their partner when the events out of which the lawsuits arose occurred. Moreover, Hardy and Jackson do not assert that we should apply the Uniform Partnership Act of 1994 or that the Act's requirements have even been met.[6] We therefore hold that the district court correctly ruled that Jones should not be held responsible for any expenses relating to those lawsuits. It necessarily follows that such expenses could not be considered as capital contributions for purposes of allocating Jones's partnership interest.

## C. The MacKay Settlement

Hardy and Jackson next claim that the district court erred in failing to properly allocate the post-dissolution capital contributions and reasonable expenses of the MacKay settlement among the partners' interests.[7] Once again, this issue involves a mixed question of law and fact.

Prior to the trial, MacKay, Hardy, and Jones stipulated to a settlement agreement wherein the partnership paid MacKay the sum of $39,584.49 plus interest. Thereafter, the district court allowed the cost of the settlement to be considered as a Jones/Hardy/Jackson partnership expense. However, Jackson was not a partner when the parties entered into the settlement agreement. Therefore, Hardy and Jackson argue, "we have a Jones/Hardy obligation paid by [the] Jackson/Jones/Hardy partnership in violation of the undisputed agreement of all the parties." Accordingly, they assert that the court should have reduced Jones's partnership allocation in this regard by twenty-five percent.

Jones argues that Hardy and Jackson have falsely represented that there was a unanimous agreement among the parties that a Jones/Hardy obligation was paid by the Jackson/Jones/Hardy partnership. According to Jones, "[t]he issue of limiting the payment to MacKay from the shares of Jones and Hardy was always contested by plaintiff Jones." Furthermore, Jones cites section 48–1–38(1)

---

6. Section 703(b) provides:

> (b) A partner who dissociates without resulting in a dissolution and winding up of the partnership business is liable as a partner to the other party in a transaction entered into by the partnership, or a surviving partnership under [Article] 9, within two years after the partner's dissociation, only if at the time of entering into the transaction the other party:
> (1) reasonably believed that the dissociated partner was then a partner;
> (2) did not have notice of the partner's dissociation; and
> (3) is not deemed to have had knowledge under Section 303(e) or notice under Section 704(c).

Uniform Partnership Act § 703(b) (1994).

7. The court actually did not make a determination on remand regarding the proper allocation of the MacKay settlement. The hearing on remand indicates that all parties and the court were somewhat confused as to whether the issue had been fully addressed earlier. The court questioned the appropriateness of addressing the issue and asked counsel, "If I deal with [the MacKay matter] now on the remand hearing, aren't you getting two bites at the apple?" However, after a brief discussion, the court and the parties moved on to other matters without resolving the MacKay issue. Because we can dispose of this issue by addressing the district court's prior determination, the court's failure to resolve the issue on remand does not concern us on this appeal.

and (7) of the Utah Code for the proposition that when Jackson became a new partner, the creditors of the existing partnership became creditors to Jackson.

Under Utah partnership law, a new partner admitted to an existing partnership is liable for the debts of the partnership that arose prior to his admission. The Code states, "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as if he had been a partner when such obligations were incurred, except that his liability shall be satisfied only out of partnership property." Utah Code Ann. § 48–1–14 (1998); *see also id.* § 48–1–38(1) ("When any new partner is admitted into an existing partnership ... if the business is continued without liquidation of the partnership affairs, creditors of the first, or dissolved, partnership are also creditors of the partnership so continuing the business."). Hardy and Jackson assert in their brief that "Jackson entered the partnership subsequent to [the MacKay note] being executed with the express agreement that he was in no way liable for the note." However, they have not cited any evidence in the record to support their assertion that such an agreement existed, and they apparently did not provide the district court with any such support during any of the proceedings below. In the absence of any evidence of an agreement, we must conclude that Jackson was liable for the MacKay settlement expenses incurred by the partnership before his admission. We therefore hold that the court did not err in allocating the expense to the partnership that existed at the time Jones withdrew.

### D. The District Court's Award of Post–Judgment Interest to Jones

After the district court's original judgment in favor of Jones, Hardy and Jackson deposited with the court the sum of the judgment ($76,673.23), which the court placed in an interest-bearing account. Pursuant to a motion by Hardy and Jackson, the district court entered an order staying execution on the judgment pending final resolution of their appeal. The court's original judgment included the following paragraph: "The judgment shall carry interest as provided by Utah Code Ann. § 15–1–4."

Hardy and Jackson now complain that the district court erred in awarding post-judgment interest to Jones at the statutory interest rate, because the money had been deposited by the court in a custodial interest-bearing account, and the interest rate on that account was less than the statutory interest rate.

We decline, however, to address this argument. This issue involves the district court's original judgment. Therefore, they should have raised this issue in their first appeal. Issues that could have been raised in the first appeal but were not raised are waived. *See DeBry v. Cascade Enters.*, 935 P.2d 499, 502 (Utah 1997) (failing to raise issues ripe for appeal results in waiver of right to raise them at later time); *State ex rel. Road Comm'n v. Rohan*, 28 Utah 2d 375, 503 P.2d 141 (1972); *Smith v. DeNiro*, 28 Utah 2d 259, 501 P.2d 265 (1972). The reason for this rule is simple: Judicial economy and the parties' interests in the finality of judgments are in no way furthered if parties are allowed to engage in piecemeal appeals.

### II. JONES'S CROSS–APPEAL

Jones presents four issues in his cross-appeal.[8] However, we decline to address any of his arguments because he has utterly failed to comply with our briefing requirements. Our rules of appellate procedure clearly set forth the requirements that appellants and appellees *must* meet when submitting briefs before this court. *See* Utah R.App. P. 24. The rules are easy to understand and offer a step-by-step approach to writing an appellate brief. This court, as well as the court of appeals, has held in

---

8. Jones raises the following issues in his cross-appeal: (1) "Did the trial court err in granting Roy E. Hardy and Rex L. Jackson (defendants) any credits for their claimed post-dissolution capital contributions?"; (2) "Did the trial court err in dismissing the claim of J. Earl Jones against the defendants for fraud?"; (3) "Did the trial court err in dismissing the petition of plaintiff to correct the original judgment entered herein?"; and (4) "Did the trial court err in prohibiting plaintiff from pursuing discovery?"

numerous cases that we will not address issues not adequately briefed.[9] Our rules also provide that "[b]riefs which are not in compliance [with rule 24] may be disregarded or stricken, on motion or sua sponte by the court." Utah R.App. P. 24(i). The Jones brief fails to comply with almost every requirement set forth in rule 24. To illustrate, we provide the following nonexhaustive examples of its deficiencies.

First, the brief fails to include in its statement of the issues presented for review (1) the standard of appellate review *with supporting authority*, and (2) a citation to the record showing that the issue was preserved in the trial court or a statement of grounds for seeking review of an issue not preserved in the trial court. *See* Utah R.App. P. 24(a)(5).

Second, the brief fails to correctly cite to the original record as paginated pursuant to rule 11(b) of our rules of appellate procedure,[10] and the statement of the facts includes facts not relevant to the issues presented for review. *See* Utah R.App. P. 24(a)(7) & (e).

Third, the brief's argument fails to include "the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court." Utah R.App. P. 24(a)(9). Moreover, it fails to support some of the arguments with citations to *relevant* authorities. *See* Utah R.App. P. 24(a)(9) & (e).

Finally, the brief is not concise; it is not presented with accuracy; it is not logically arranged; and it is not free from burdensome, irrelevant, and immaterial matters. *See* Utah R.App. P. 24(i). The first issue in the reply brief, which constitutes the first argument in the cross-appeal, illustrates the point. The brief contains twenty-nine numbered paragraphs, some of which contain a single sentence. Paragraph 13 contains subparagraphs A through H, while paragraph 14 contains subparagraphs A through U. Subparagraph U contains sub-sub-paragraphs 1 through 10 on one point, and sub-sub-paragraphs 1 through 4 on another. Moreover, the brief fails to make clear assertions or engage in even a modicum of analysis and instead merely quotes or paraphrases the

9. The cases of inadequate briefing are disconcertingly legion. We provide the following cases as a small example of what has come before this court and the court of appeals: *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) ("Paul Valcarce's brief on appeal contains little analysis on this point. There is no reference to legal authority in support of his contention, and no citation to the record.... Because of inadequate analysis, we decline to address Paul Valcarce's claim on appeal."); *Carrier v. Pro–Tech Restoration*, 944 P.2d 346, 354 (Utah 1997) ("Pro–Tech merely provides a short summary of our decision in [*State v.*] *Menzies* [889 P.2d 393 (1994)] and then ends with the conclusory statement, 'This case should be no different.' Pro–Tech wholly fails to present any argument concerning the specific issue in this case...."); *First Sec. Bank of Utah v. Creech*, 858 P.2d 958, 962 (Utah 1993) (refusing to address contention in brief that did not conform to requirements of rule 24(a)(9)); *State v. Wareham*, 772 P.2d 960, 966 (Utah 1989) (declining to address issue where "brief wholly lacks legal analysis and authority to support ... argument"); *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (" '[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " (quoting *Williamson v. Opsahl*, 92 Ill.

App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981))); *Phillips v. Hatfield*, 904 P.2d 1108, 1109 (Utah Ct.App.1995) ("However, because we find Hatfield's appellate brief wholly fails to comply with Rule 24 of the Utah Rules of Appellate Procedure, and it inadequately presents the issue for our consideration, we decline to address his substantive argument."); *Steele v. Board of Review of Indus. Comm'n*, 845 P.2d 960, 961–62 (Utah Ct.App.1993) (striking brief which did not comply with requirements of rule 24(a)(7) and (9)); *Koulis v. Standard Oil Co.*, 746 P.2d 1182, 1185 (Utah Ct.App.1987) (refusing to consider brief that failed to contain record citations and did not conform to rule 24 requirements for argument section of brief).

10. We emphasize the importance of citing to the record as paginated for appeal, not as originally paginated in the lower court proceedings. When the record contains multiple volumes of transcripts, exhibits, orders, motions, judgments, and other legal documents, proper citation is imperative. Without it, neither the parties nor this court can quickly and efficiently locate the referenced passages. In this case, the record contains thirty-two volumes spanning seven years. While the entire record was paginated according to rule 11(b) of our rules of appellate procedure, Jones's brief contains only a handful of proper record citations.

record at great length, leaving this court with the task of attempting to divine Jones's position.

■■■ Jones's brief has increased the costs of litigation for both parties and unduly burdened the judiciary's time and energy. As Hardy and Jackson noted in their reply brief, because the Jones brief failed to comply with our briefing rules, they were required to expend additional attorney fees in responding. Our briefing rules were fashioned in part to lower the costs of litigation and maximize judicial economy by facilitating communication between parties and this court. Failure to comply with our rules hinders the judicial process. Therefore, because Jones's brief does not comply with our rules, we disregard the issues raised therein pursuant to rule 24(i) of the Utah Rules of Appellate Procedure.[11]

## CONCLUSION

The district court's amended judgment is affirmed.

Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

HOWE, Chief Justice, concurring and dissenting:

I concur in the majority opinion except as to its treatment of the cross-appeal. I disagree with some of the criticism leveled at Jones' brief (the appellee and cross-appellant).

For example, the majority finds fault with Jones' brief in that "the brief's argument fails to include the 'contentions and reasons of the appellant with respect to the issues presented.'" I find the brief to be adequate. Under rule 24(f) of the Utah Rules of Appellate Procedure, Jones, as a cross-appellant,

was required to set out the "issues and arguments" contained in the cross-appeal. He has set out the issues as follows:

1. Did the trial court err in granting Roy E. Hardy and Rex L. Jackson (defendants) any credits for their claimed post-dissolution capital contributions? Standard of Review: clearly erroneous.

2. Did the trial court err in dismissing the claim of J. Earl Jones (plaintiff) against the defendants for fraud? Standard of Review: clearly erroneous.

3. Did the trial court err in dismissing the petition of plaintiff to correct the original judgment entered herein? Standard of Review: clearly erroneous.

4. Did the trial court err in prohibiting plaintiff from pursuing discovery? Standard of Review: clearly erroneous.

Following the statement of each of the above issues, Jones' counsel has presented his argument in support of his resolution of those issues.

While the brief is deficient in some other regards as pointed out in the majority opinion, I believe that on balance it is adequate for us to consider the cross-appeal on its merits.

---

11. In his dissent, Chief Justice Howe implies that the brief of a cross-appellant need only comply with rule 24(f) and simply set forth the cross-appellant's "issues and arguments." However, a cross-appellant is still an "appellant" and thus must comply with rule 24(a). Therefore, a cross-appellant is likewise required to show that his issues have been preserved in the trial court, to state the appropriate standard of review with supporting authority, to state the contentions and

reasons with respect to his issues with citations to authority and to the record, etc. It is important to remember that a cross-appeal is a separate appeal raising distinct issues for review. Thus, a cross-appeal must be able to stand on its own, independent of the original appeal. This is so because the original appeal may become irrelevant through mootness or voluntary dismissal. *See* Utah R.App. P. 37.